<u>NOT FOR PUBLICATION</u>

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

_____

MAGALY SANTINI,                                     :
                                                    :
      Plaintiff,                                :            Civil Action No. 08-5348 (SRC)
                                                    :
      v.                                        :            **OPINION**
                                                    :
COMMISSIONER OF SOCIAL                              :
SECURITY,                                           :
                                                    :
      Defendant.                                :
_____:

<u>**CHESLER, District Judge**</u>

      This matter comes before the Court on the appeal by Plaintiff Magaly Santini ("Santini") of the final decision of the Commissioner of Social Security ("Commissioner") determining that she was not disabled under the Social Security Act (the "Act"). This Court exercises jurisdiction pursuant to 42 U.S.C. § 405(g) and, having considered the submissions of the parties without oral argument, pursuant to L. CIV. R. 9.1(b), finds that the Commissioner's decision is supported by substantial evidence and is hereby **AFFIRMED**.

## I. BACKGROUND

      The following facts are undisputed. Santini was born in 1967. She has worked as a data entry employee. On June 12 and 22, 2006, she filed applications for Social Security Disability Insurance benefits and Supplemental Security Income benefits, alleging disability since June 1, 2006, due to seizures and sleep apnea. Her date last insured is December 31, 2007. Plaintiff's claims were denied by the Commissioner initially and on reconsideration. Pursuant to Plaintiff's request, a hearing was held before Administrative Law Judge Richard L. De Steno (the "ALJ")

on March 25, 2008.  The ALJ denied Plaintiff's claim in an unfavorable decision issued May 22, 2008.  After the Appeals Council denied Plaintiff's request for review of the ALJ's decision, that decision became final as the decision of the Commissioner of Social Security.  On October 30, 2008, Plaintiff filed the instant appeal of the Commissioner's decision.

## II.  DISCUSSION

A.    **Standard of Review**

This Court has jurisdiction to review the Commissioner's decision under 42 U.S.C. § 405(g).  This Court must affirm the Commissioner's decision if it is "supported by substantial evidence."  42 U.S.C. §§ 405(g), 1383(c)(3); Stunkard v. Sec'y of Health and Human Services, 841 F.2d 57, 59 (3d Cir. 1988); Doak v. Heckler, 790 F.2d 26, 28 (3d Cir. 1986).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)).  Substantial evidence "is more than a mere scintilla of evidence but may be less than a preponderance."  McCrea v. Comm'r of Soc. Sec., 370 F.3d 357, 360 (3d Cir. 2004).  The reviewing court must consider the totality of the evidence and then determine whether there is substantial evidence to support the Commissioner's decision.  See Taybron v. Harris, 667 F.2d 412, 413 (3d Cir. 1981).

The reviewing court is not "empowered to weigh the evidence or substitute its conclusions for those of the fact-finder."  Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992), cert. denied sub nom. Williams v. Shalala, 507 U.S. 924 (1993) (citing Early v. Heckler, 743 F.2d 1002, 1007 (3d Cir. 1984)).  If the ALJ's findings of fact are supported by substantial evidence, this Court is bound by those findings, "even if [it] would have decided the factual

2

se

inquiry differently." <u>Fargnoli v. Massanari</u>, 247 F.3d 34, 35 (3d Cir. 2001); <u>see</u> <u>also</u> <u>Hartranft v.</u> <u>Apfel</u>, 181 F.3d 358, 360 (3d Cir. 1999).

      In determining whether there is substantial evidence to support the Commissioner's decision, the reviewing court must consider: "(1) the objective medical facts; (2) the diagnoses and expert opinions of treating and examining physicians on subsidiary questions of fact; (3) subjective evidence of pain testified to by the claimant and corroborated by family and neighbors; (4) the claimant's educational background, work history and present age." <u>Blalock v.</u> <u>Richardson</u>, 483 F.2d 773, 776 (4th Cir. 1973).  "The presence of evidence in the record that supports a contrary conclusion does not undermine the Commissioner's decision so long as the record provides substantial support for that decision."  <u>Sassone v. Comm'r of Soc. Sec.</u>, 165 Fed. Appx. 954, 955 (3d Cir. 2006) (citing <u>Blalock</u>, 483 F.2d at 775).

**B.**    <u>**Standard for Awarding Benefits Under the Act**</u>

      The claimant bears the initial burden of establishing his or her disability.  42 U.S.C. § 423(d)(5).  To qualify for DIB or SSI benefits, a claimant must first establish that he is needy and aged, blind, or "disabled."  42 U.S.C. § 1381.  A claimant is deemed "disabled" under the Act if he is unable to "engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A); <u>see also</u> <u>Kangas v. Bowen</u>, 823 F.2d 775, 777 (3d Cir. 1987).  Disability is predicated on whether a claimant's impairment is so severe that he "is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. §

423(d)(2)(A).  Finally, while subjective complaints of pain are considered, alone, they are not

enough to establish disability.  42 U.S.C. § 423(d)(5)(A).  To demonstrate that a disability exists,

a claimant must present evidence that his or her affliction "results from anatomical,

physiological, or psychological abnormalities which are demonstrable by medically accepted

clinical and laboratory diagnostic techniques."  42 U.S.C. § 423(d)(3).

**C.**      **The Five-Step Evaluation Process**

        Determinations of disability are made by the Commissioner, pursuant to the five-step

process outlined in 20 C.F.R. § 404.1520.  The claimant bears the burden of proof at steps one

through four.  Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

        At the first step of the evaluation process, the Commissioner must determine whether the

claimant is currently engaged in substantial gainful activity.[1]  20 C.F.R. § 404.1520(b).  If a

claimant is found to be engaged in such activity, the claimant is not "disabled" and the disability

claim will be denied.  Id.; Yuckert, 482 U.S. at 141.

        At step two, the Commissioner must determine whether the claimant is suffering from a

severe impairment.  20 C.F.R. §§ 404.1520(a)(ii), (c).  An impairment is severe if it

"significantly limits [a claimant's] physical or mental ability to do basic work activities."  Id.  In

determining whether the claimant has a severe impairment, the age, education, and work

experience of the claimant will not be considered.  Id.  If the claimant is found to have a severe

impairment, the Commissioner addresses step three of the process.

        At step three, the Commissioner compares the medical evidence of the claimant's

impairment(s) with the impairments presumed severe enough to preclude any gainful work, listed

---

        [1] Substantial gainful activity is "work that involves doing significant and productive
physical or mental duties; and is done (or intended) for pay or profit."  20 C.F.R. § 404.1510.

in 20 C.F.R. Part 404, Subpart P, Appendix 1.  <u>See</u> 20 C.F.R. § 404.1594(f)(2).  If a claimant's

impairment meets or equals one of the listed impairments, he will be found disabled under the

Social Security Act.  If the claimant does not suffer from a listed impairment or its equivalent,

the analysis proceeds to step four.

      In <u>Burnett v. Comm'r of Soc. Sec.</u>, 220 F.3d 112, 119-20, 120 n.2 (3d Cir. 2000), the

Third Circuit found that to deny a claim at step three, the ALJ must specify which listings[2] apply

and give reasons why those listings are not met or equaled.  In <u>Jones v. Barnhart</u>, 364 F.3d 501,

505 (3d Cir. 2004), however, the Third Circuit noted that "<u>Burnett</u> does not require the ALJ to

use particular language or adhere to a particular format in conducting his analysis.  Rather, the

function of <u>Burnett</u> is to ensure that there is sufficient development of the record and explanation

of findings to permit meaningful review."  (<u>Id.</u>)  An ALJ satisfies this standard by "clearly

evaluating the available medical evidence in the record and then setting forth that evaluation in

an opinion, even where the ALJ did not identify or analyze the most relevant listing."  <u>Scatorchia</u>

<u>v. Comm'r of Soc. Sec.</u>, 137 Fed. Appx. 468, 471 (3d Cir. 2005).

      Step four requires the ALJ to consider whether the claimant retains the residual functional

capacity to perform his past relevant work.  20 C.F.R. § 404.1520(e).  If the claimant is able to

perform his past relevant work, he will not be found disabled under the Act.  In <u>Burnett</u>, the

Third Circuit set forth the analysis at step four:

> In step four, the ALJ must determine whether a claimant's residual functional
> capacity enables her to perform her past relevant work. This step involves three
> substeps: (1) the ALJ must make specific findings of fact as to the claimant's
> residual functional capacity; (2) the ALJ must make findings of the physical and
> mental demands of the claimant's past relevant work; and (3) the ALJ must

---

[2] Hereinafter, "listing" refers to the list of severe impairments as found in 20 C.F.R. Part 404, Subpart P, Appendix 1.

compare the residual functional capacity to the past relevant work to determine
whether claimant has the level of capability needed to perform the past relevant
work.

Burnett, 220 F.3d at 120.  If the claimant is unable to resume his past work, and his condition is

deemed "severe," yet not listed, the evaluation moves to the final step.

At the fifth step, the burden of production shifts to the Commissioner, who must

demonstrate that there are other jobs existing in significant numbers in the national economy

which the claimant can perform, consistent with his medical impairments, age, education, past

work experience, and residual functional capacity.  20 C.F.R. §§ 404.1512(g), 404.1560(c)(1).  If

the ALJ finds a significant number of jobs that claimant can perform, the claimant will not be

found disabled.  Id.

When the claimant has only exertional limitations, the Commissioner may utilize the

Medical-Vocational Guidelines found in 20 C.F.R. Part 404, Subpart P, Appendix 2 to meet the

burden of establishing the existence of jobs in the national economy.  These guidelines dictate a

result of "disabled" or "not disabled" according to combinations of factors (age, education level,

work history, and residual functional capacity).  These guidelines reflect the administrative notice

taken of the numbers of jobs in the national economy that exist for different combinations of

these factors.  20 C.F.R. Part 404, Subpart P, Appendix 2, Paragraph 200.00(b).  When a

claimant's vocational factors, as determined in the preceding steps of the evaluation, coincide

with a combination listed in Appendix 2, the guideline directs a conclusion as to whether an

individual is disabled.  20 C.F.R. § 404.1569; Heckler v. Campbell, 461 U.S. 458 (1983).  The

claimant may rebut any finding of fact as to a vocational factor.  20 C.F.R. Part 404, Subpart P,

Appendix 2, Paragraph 200.00(b).

Additionally, pursuant to 42 U.S.C. § 423(d)(2)(B), the Commissioner, in the five-step

6

process, "must analyze the cumulative effect of the claimant's impairments in determining whether she is capable of performing work and is not disabled."  Plummer v. Apfel, 186 F.3d 422, 428 (3d Cir. 1999).  Moreover, "the combined impact of the impairments will be considered throughout the disability determination process."  42 U.S.C. § 423(d)(2)(B); 20 C.F.R. § 1523. However, the burden still remains on the Plaintiff to prove that the impairments in combination are severe enough to qualify him for benefits.  See Williams v. Barnhart, 87 Fed. Appx. 240, 243 (3d Cir. 2004) (placing responsibility on the claimant to show how a combination-effects analysis would have resulted in a qualifying disability).

      D.    The ALJ's decision

In brief, the issue before the ALJ was whether Plaintiff was disabled under the Social Security Act prior to her date last insured of December 31, 2007.  The ALJ examined the record and determined that: 1) at step one, Plaintiff had not engaged in substantial gainful activity during the relevant time period; 2) at step two, Plaintiff had a seizure disorder, diabetes, and obesity, which were "severe" impairments within the meaning of the Regulations; 3) at step three, Plaintiff's impairments, singly or in combination, did not meet or equal an impairment in the Listings; and 4) at step four, Plaintiff retained the residual functional capacity to perform her past relevant work.  The ALJ concluded that Plaintiff had not been under a disability, as defined in the Social Security Act, prior to her date last insured.

      E.    Plaintiff's Appeal

Plaintiff first contends that the ALJ did not adequately address Plaintiff's obesity.  Yet Plaintiff does not identify a legal error the ALJ made in that regard, nor point to substantial evidence that the ALJ overlooked.  Plaintiff contends that the ALJ did not "analyze plaintiff's obesity in any meaningful way."  (Pl.'s Br. 17.)  The decision does not support this assertion.

After examining the decision and the record, this Court concludes that the ALJ considered Plaintiff's obesity as required by law.

A useful point of contrast is the case of Diaz v. Comm'r of Soc. Sec., 577 F.3d 500, 504 (3d Cir. 2009), in which the Third Circuit vacated the district court's decision affirming the Commissioner's decision in a case in which the ALJ had found, at step two – as in the instant case – that obesity was a severe impairment for the claimant.  The Third Circuit found that the ALJ had failed, at steps three and four, to consider the effect of obesity in combination with the other impairments, as required by Social Security Ruling 00-3p (superceded by SSR 02-1p).  Id. at 503.  The Third Circuit voiced particular concern about the analysis of the claimant's functional capacity, noting that "morbid obesity would seem to have exacerbated her joint dysfunction as a matter of common sense, if not medical diagnosis."  Id.  The Court vacated the district court's decision, having concluded that, "absent analysis of the cumulative impact of Diaz's obesity and other impairments on her functional capabilities, we are at a loss in our reviewing function."  Id. at 504.

What appeared to particularly trouble the Third Circuit in Diaz was the common sense expectation that obesity would exacerbate the claimant's degenerative joint disease of the knee. Id.  The record in the instant case is quite different.  Here, there is no common sense reason to expect that obesity would exacerbate the impairing effects of either the seizure disorder or diabetes.  In any event, Plaintiff bears the burden of proving that, had the ALJ considered these impairments in combination, the outcome of the analysis would have changed.  Plaintiff here offers neither analysis nor evidence to support that conclusion.  Plaintiff does not point to any medical evidence that her obesity, either alone or in combination with another condition, has impaired her ability to perform her past relevant work.

8

To the contrary, what attracts attention in this record is that Dr. Sadeghi, Plaintiff's treating physician, submitted a report in which he stated that he had treated Plaintiff every three months from July of 2002 through January of 2007, and diagnosed Plaintiff with a seizure disorder, and he described Plaintiff as "obese." (Tr. 130.) Dr. Sadeghi declined, however, to express any opinion about Plaintiff's ability to perform work-related activities. (Tr. 131.) When asked whether there were any other conditions that limited the claimant's ability to do work-related activities, Dr. Sadeghi checked the "Yes" box, and wrote: "Due to patients seizures, she was advised not to drive. Seizure is unpredictable, especially that her [illegible] is still uncontrolled." (Tr. 131.)

Dr. Sadeghi's report constitutes substantial evidence from which a reasonable finder of fact could arrive at two important negative inferences: 1) the absence of any statements of work-related restrictions, in the presence of a statement of a restriction on driving, suggests that Dr. Sadeghi did not find that Plaintiff's medical conditions impaired her ability to work; and 2) the acknowledgment of Plaintiff's obesity, combined with the absence of any statements indicating functional impairments due to obesity, suggests that he had considered the obesity in combination with the seizure disorder and did not find any additional functional limitations due to the combination. These inferences support the ALJ's decision to not consider Plaintiff's obesity more than he did.

The instant case is similar to Diaz in that in both, the claimant cited obesity as an impairment and the ALJ found it to be severe at step two. In Diaz, the ALJ failed to consider it in combination with her other impairments at steps three and four. In the instant case, in contrast, at step three, the ALJ expressly considered the question of whether the obesity increased the severity of Plaintiff's other impairments, and found no evidence to indicate that it did. (Tr.

9

19.)  Nor does Plaintiff, on appeal, even suggest that the medical evidence of record indicates

that the obesity increased the severity of the seizure disorder or the diabetes.  Thus, in contrast to

Diaz, Plaintiff has offered no evidence here to indicate that the ALJ's consideration of obesity in

combination with the other impairments was insufficient.

Moreover, in Diaz, it was a matter of common sense that obesity might aggravate knee

degeneration and that the effect of the two together should be considered.  No such common

sense link appears in the present case.  In fact, in the instant case, common sense, if considered,

would weigh against Plaintiff, as she testified that she performed her past relevant work at a

weight of 250 pounds, thus conceding that a similar weight condition did not prevent her from

working in the past.  (Tr. 170-71.)  Nor does Plaintiff explain how an increase in weight from

250 pounds to 287 pounds has resulted in her losing her ability to work.

In addition, Dr. Fernando evaluated Plaintiff when she was at a weight of 287 pounds.

(Tr. 145.)  The exam included a physical evaluation, and the report gives this assessment:

> GENERAL APPEARANCE, GAIT, STATION: The claimant appeared to be in
> no acute distress.  Gait normal.  Can walk on heels and toes without difficulty.
> Squat full.  Stance normal.  Used no assistive devices.  Needed no help changing
> for exam or getting on and off exam table.  Able to rise from chair without
> difficulty.

(Tr. 145.)  The musculoskeletal assessment noted some restriction in the ability to bend, but

otherwise a full range of motion.  (Tr. 145-146.)  Dr. Fernando found no impairment in her

ability to engage in fine motor activity with her hands.  (Tr. 146.)  In sum, Plaintiff does not

contend that Dr. Fernando made any findings which indicate that she lacks the residual functional

capacity to perform data entry work, nor are any such findings apparent.

Plaintiff does not point out, nor does this Court discern, any way in which the ALJ's

decision does not follow the procedures for the evaluation of obesity stated in SSR 02-01p.

10

Although SSR 02-01p states that obesity may increase the risk of developing diabetes, the ALJ considered diabetes to be a severe impairment and weighed it in his analysis. Plaintiff does not contend that the ALJ should have arrived at a different result at step three, but suggests that the ALJ should have reached a different outcome for the residual functional capacity determination. Nothing in SSR 02-01p, however, supports that conclusion. The Ruling observes that obesity "can cause limitation of function." The problem for Plaintiff, however, is that she has pointed to no medical evidence of record that her obesity has caused a substantial or relevant work-related limitation of her functioning. Absent that, the ALJ could not have come to any other conclusion at step four.

In fact, having considered the medical evidence of record cited by the ALJ, this Court does not discern how the ALJ could have reasonably arrived at any other conclusion. Of the four physician reports in the record (Dr. Sadeghi (Tr. 131), Dr. Fernando (Tr. 147), Dr. Horton (Tr. 139), and Dr. Pinto (Tr. 142)), not one states that Plaintiff is unable to work, or has any limitation on her ability to work. The ALJ's decision is supported by substantial evidence.

Rather than being like Diaz, this case more resembles Rutherford v. Barnhart, 399 F.3d 546 (3d Cir. 2005), in which the Third Circuit rejected similar arguments that the ALJ failed to adequately consider the claimant's obesity because the plaintiff had made only a general argument as to how obesity contributed to her inability to work:

> Rutherford has not specified how that factor would affect the five-step analysis undertaken by the ALJ, beyond an assertion that her weight makes it more difficult for her to stand, walk and manipulate her hands and fingers. That generalized response is not enough to require a remand, particularly when the administrative record indicates clearly that the ALJ relied on the voluminous medical evidence as a basis for his findings regarding her limitations and impairments. Because her doctors must also be viewed as aware of Rutherford's obvious obesity, we find that the ALJ's adoption of their conclusions constitutes a satisfactory if indirect consideration of that condition.

11

Id. at 553.  In the instant case, Plaintiff has not even given as much of an explanation of the impact of her obesity on her ability to work as plaintiff had in Rutherford.  Under the facts of this case, given that Plaintiff has neither offered medical evidence that her obesity decreased her functional capacity to work, nor offered a specific explanation of how her obesity should have affected the ALJ's analysis, the ALJ gave sufficient consideration to Plaintiff's obesity.

Plaintiff argues as if the obesity, once demonstrated, shifts the burden of proof of disability from Plaintiff to the Commissioner: "Here, plaintiff's morbid obesity undoubtedly presents work related restrictions of both an exertional and a non-exertional nature."  (Pl.'s Br. 16.)  It is not sufficient, though, to assert this: Plaintiff bears the burden of proving this, and Plaintiff's brief does not point to any medical evidence that the obesity impaired Plaintiff's ability to work.

Plaintiff attempts to argue that it is inconsistent for the ALJ to find that the obesity constituted a severe impairment at step two, but not to find any residual functional capacity limitation at step four.  This argument is meritless, as the legal tests at step two and at step four are wholly different.  Neither the Act nor the case law supports the position that finding a severe impairment at step two means that such an impairment is necessarily disabling at step four.

Plaintiff next argues that the ALJ did not engage in a task-by-task comparison between the residual functional capacity and the demands of Plaintiff's past relevant work.  In the brief, this argument appears to be mixed with the contention that the ALJ did not sufficiently explain his residual functional capacity determination.  These arguments cannot gain any traction in view of this Court's conclusion that Plaintiff failed to offer evidence from any physician that she had a disabling impairment.  Given the evidence of record, even if this Court were to find that a task-by-task comparison was omitted, the result of the analysis would not change: the ALJ could only

have concluded that Plaintiff maintained the residual functional capacity to perform her past relevant work.

Plaintiff has pointed to no medical evidence in the record that is even inconsistent with the ALJ's residual functional capacity determination, much less which raises any serious question as to whether the ALJ's determination was supported by substantial evidence.

Inasmuch as this Court has concluded that the ALJ's decision is supported by substantial evidence, this Court need not reach Plaintiff's arguments directed to the question of whether the case should be remanded to a different ALJ.

### III.  CONCLUSION

For the reasons stated above, this Court finds that the Commissioner's decision is supported by substantial evidence and is affirmed.

Dated: October 14, 2009

                         s/ Stanley R. Chesler
                        STANLEY R. CHESLER, U.S.D.J.